CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mail: 8033 Linda Vista Road Suite 200
San Diego CA 92111
(858) 375-7385; (888) 422-5191 fax
dennisp@potterhandy.com

Attorneys for Plaintiff SCOTT JOHNSON

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Johnson**,<br><br>    Plaintiff,<br><br>v.<br><br>**Baird Lands, Inc.**, a California Corporation;<br>**Jason's Café, Inc.**, a California Corporation; and Does 1-10,<br><br>    Defendants. | **Case:** 5:18-CV-05365-VKD<br><br>**Reply in Support of Plaintiff's Motion for Attorney's Fees**<br><br>Date:   April 21, 2020<br>Time:  10:00 a.m.<br>Ctrm:   2 (5th Floor)<br><br>Hon. Judge Virginia K DeMarchi |

## Table of Contents

Table of Authorities ..................................................................................................... 3

I.   Prevailing Rate in the Community ............................................................... 1

    A.   Relevance of Non-ADA Civil Rights Cases .......................................... 1

    B.   Other ADA Cases .................................................................................. 2

II.  Arguments regarding Billing Hours .............................................................. 4

    A.   Excessive or Redundant Billing Arguments .......................................... 5

    B.   "Clerical Tasks", Delegation and "Tenth Billing Increments" ........... 9

    C.   Block Billing Objections ..................................................................... 11

III. Investigator Fees .......................................................................................... 14

IV.  Estimates Regarding Motion ....................................................................... 14

V.   Conclusion ................................................................................................... 15

# Table of Authorities

**Cases**

*Blum v. Stenson* (1984) 465 U.S. 886 ................................................................2

*Camacho v. Bridgeport Financial, Inc.* (9th Cir. 2008) 523 F.3d 973 ..................2

*Chapman v. Schellville Grill* (N.D. Ca., 2017) 2017 WL 2888581 ......................4

*Cunningham v. County of Los Angeles* (9th Cir. 1988) 879 F.2d 481 ..................2

*Estrada v. Mirlan* (CD Ca. 2019) 5:18-cv-01892-JGB ........................................3

*Fernandez v. Salgado* (CD Ca.) 2:19-cv-01817-SK..............................................3

*Fischer v. SJP–P.D. Inc.* (9th Cir.2000) 214 F.3d 1115 .....................................12

*Fox v. Vice* (2011) 563 U.S. 826 ............................................................................5

*Fox v. Vice*,
    563 U.S. 826 (2011) .....................................................................................13

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .....................................................................................13

*Horsford v. Board of Trustees of California State University* (2005) 132
    Cal.App.4th 359...........................................................................................8

*Horsford v. Board of Trustees of California State University*,
    132 Cal.App.4th 359 (2005).........................................................................8

*Johnson v. Khalsa Insurance Agency* (N.D. Cal. 2020) 19-cv-02725-SBA (AGT)
    (April 8, 2020)..............................................................................................4

*Johnson v. Pacific Motor Inn, LLC* (N.D. Cal. 2020) 3:18-cv-06570-JSC
    (declining to award requested rates even where opposing counsel agreed the
    rates were reasonable.) (April 8, 2020).......................................................4

*Langer v. Gutierrez* (CD Ca. 2019) 04963-AB-JPR .............................................3

*Lytle v. Carl*,
    382 F.3d 978 (9th Cir.2004) ......................................................................13

*Oberfelder v. City of Petaluma* (N.D.Cal. Jan.29, 2002)  No. C–98–1470 MHP,
    2002 WL 472308........................................................................................12

*Saldana-Neily v. Taco Bell of Am., Inc.*, 2008 WL 793872 .................................14

*Shaw v. Five M, LLC* (N.D. Cal.) 2017 WL 747465 ............................................. 4

*Stonebrae L.P v. Toll Bros.* (N.D Cal. 2011) 2011 WL 1334444 .........................12

*Welch v. Metropolitan Life Ins. Co.* (9th Cir. 2007) 480 F.3d 942 ......................12

**Rules**

Eastern District of California Local Rule 294 ........................................................1

*FRCP 56(d)(2)(B)* ..................................................................................................1

Mr. Johnson prevailed on his Motion for Summary Judgment. He is unquestionably the prevailing party in this matter and entitled to fully recovery of his attorneys' fees. Defendant opposes this motion on numerous grounds in an opposition amounting to 40 pages of argument including his exhibits. Plaintiff will address each of these arguments in turn.

### I. Prevailing Rate in the Community

Defendant's opposition appears to insinuate that Plaintiff is somehow misleading the court about the history of the prevailing rates in this community. The opposite is true. Plaintiff's moving paper cited the opposing authority and explains at length why those cases have been wrongly decided. Quite simply, the Northern District of California has systemically awarded rates inconsistent with the prevailing rates in the area. Rather than refute those arguments, Defendant simply suggests this court should follow *Autozone* without question. This would be reversible error.[1] The prior decisions cited have largely originated from rulings that either approved the exact rates sought, or relied on obsolete out of district rates to arrive at those decisions. Continuing to rely on those decisions as supportive of these rates going forward is flawed and violates *Moreno,* which specifically admonishes this "holding the line"[2] tactic that is being utilized in numerous courts in this district.

**A.    Relevance of Non-ADA Civil Rights Cases**

*Autozone* was decided in error. There are numerous flawed rationale used in the decision, chiefly among them was the cabining of "relevant" cases only to those that involve ADA cases. The fact that several other civil rights cases involve different issues goes to the *number* of hours involved in those

---

[1] *Roberts v. City of Honolulu* (9th Cir. 2019) 938 F.3d 1020, 1025. (finding an abuse of discretion relying solely on past cases involving the same counsel without considering new evidence)
[2] *Moreno v. City of Sacramento* (9th Cir. 2008) 534 F.3d 1106, 1115.

cases, however, there is no authority suggesting that the *quality* of those hours deviates from that requested here. It would be obviously ridiculous to seek the same number of hours in this case as one that involved more complex litigation. But the lodestar has two sides of the calculation, both the *rate* and the *hours* component. The Ninth Circuit has specifically advised against conflating these two components resulting it "double counting" deductions.[3] This is what occurred in *Autozone* and what Defendant argues for here.

This attempt to define the relevant community as "ADA Civil Rights Plaintiffs' Counsel Practicing in the Northern District" is excessively limiting. The relevant community is the forum in which the district court sits.[4] The rates should be determined by comparing those in *similar* work with comparable skill, experience and reputation.[5] While there are some areas of law that warrant a higher hourly billing rate, due to specialized education, limited supply, or higher risk, there is no rational reason to overly limit the similar community beyond that of other civil rights attorneys, as that is the community in which CDA is in competition, and that is the community from which "competent counsel in cases involving civil and constitutional rights" would be attracted.[6]

**B.   Other ADA Cases**

Defendant cites no authority outside of the handful of cases decided involving Center for Disability Access for his position that reduced rates are appropriate. By contrast, Plaintiff has demonstrated not only that those very cases were wrongly decided and that they have been used in a self-referential

---

[3] *Cunningham v. County of Los Angeles* (9th Cir. 1988) 879 F.2d 481, 489.
[4] *Camacho v. Bridgeport Financial, Inc.* (9th Cir. 2008) 523 F.3d 973, 979
[5] *Id.*
[6] *Blum v. Stenson* (1984) 465 U.S. 886, 894.

fashion to justify their rates, but has shown cases involving other ADA counsel that justified higher rates.[7] While not part of the same community as the Northern District of Community, the Central District, which served as the initial basis for the rates set in this case, has overwhelmingly approved increased rates.[8] The Northern District of California is considered the most expensive district in California, and one of the most expensive in the entire country. That it continues to award rates that were considered in the middle range of the prevailing rate of a less expensive district nearly 10 years ago is a testament to the level to which these rates have failed to award prevailing rates.

Viewing *Rivendell* disapprovingly because it was an "unopposed default judgment" is misguided. Virtually the entirety litigation that is used to support these substantially lower rates involve "unopposed default judgments" or are decisions that rely on default judgments in support of their rates, most of which

---

[7] *Chapman v. NJ Properties Inc.* (N.D. Cal. 2019) 2019 WL 3718585, *4 (awarding $600 an hour to experienced counsel with significantly less appellate experience and record of developing ADA law, notably citing to *Rodriguez, Armstrong, Rodger and Nat'l Fed'n of the Blind* in support of the rates)

[8] *Lindsay v. Grupo Glemka* (C.D. Cal. 2019) 2:18-cv-05136-MRW (Docket #40); *Fernandez v. Salgado* (C.D. Cal. 2019) 2:19-cv-01817-SK (Docket #36); *Whitaker v. Hieu* (C.D. Cal. 2019) 2:18-cv-10584-SVW-MRW (Docket #36); *Estrada v. Mirlan* (C.D. Cal. 2019) 5:18-cv-01892-JGB (Docket #59); *Lopez v. Getz* (C.D. Cal. 2019) 2:18-cv-02152-SJO-MRW (Docket #33); *Garibay v. Shen* (C.D. Cal. 2019) 2:18-cv-09719-RGK-E (Docket #44); *Langer v. Gutierrez* (C.D. Cal. 2019) 04963-AB-JPR (Docket #24); *Kish v. Amberheartclothing, Inc.* (C.D. Cal. 2019) 2:19-cv-01752-CJC-SPx (Docket #18); *Lammey v. Plaza Segundo* (C.D. Cal. 2019) 2:18-cv-04484-JAK-PLA (Docket #20); *Fernandez v. Brothers Auto Repair* (C.D. Cal. 2019) 2-19-cv-05194-DSF-JEM (Docket #18); *Arroyo v. Cervantes* (C.D. Cal. 2020) 8:19-cv-00182-AG-ADS (J. Selna presiding) (Docket #40)

are the result of the court *approving* requested rates, and in *Shaw v. Five M LLC*, even noting that the rates were at the bottom end of the prevailing rates.[9]

While reducing the costs of litigation is an admirable goal, and one that CDA supports, it simply cannot be done in this fashion. Plaintiff's counsel are litigating these cases extremely efficiently, as evidenced by comparison to a similar firm doing similar work billing drastically higher hours (and for some reason, being awarded higher rates for doing so).[10] The fixed rates that are being awarded cannot be interpreted as anything other than courts expressing disfavor for the area of law. This has occurred even when the *defendants themselves* have declined to argue against the rates.[11]

The arguments and evidence in support of this motion have been made to others court in this district, and like the *Rivendell* case, have found these rates to be reasonable and awarded them accordingly.[12] This court should follow suit and abandon the lock step adoption of *Autozone*, which is built on a flawed foundation.

## II.   Arguments regarding Billing Hours

Defendant's counsel has attached 29 pages of argument as "Exhibits" B-F, in addition to their 11 page opposition, demonstrating various criticisms of individually billed entries as unreasonable. This violates the spirit, if not the letter, of L.R. 7-3(a)'s 25 page limit on oppositions. In complying with L.R. 7-

---

[9] *Shaw v. Five M, LLC* (N.D. Cal., Feb. 27, 2017) 2017 WL 747465, at *5 ("In the Bay Area, 'reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240.")

[10] *See: Chapman v. Schellville Grill* (N.D. Ca., 2017) 2017 WL 2888581

[11] *Johnson v. Pacific Motor Inn, LLC* (N.D. Cal. 2020) 3:18-cv-06570-JSC (declining to award requested rates even where opposing counsel agreed the rates were reasonable.) (April 8, 2020) (Docket #34)

[12] *Johnson v. Khalsa Insurance Agency* (N.D. Cal. 2020) 19-cv-02725-SBA (AGT) (April 8, 2020) (Docket #25). (Exhibit 2)

3(c)'s 15 page limit on Replies, and without waiving the separately filed objection, Plaintiff will attempt to respond thoroughly to these arguments.[13]

Defendant has taken a scattershot approach across dozens of pages of text criticizing nearly every billing entry. Plaintiff asks that in reviewing the entries below that were challenged by Defendant in the manners described in *Chabner,* that the court to bear in mind the admonitions of Justice Kagan:

> "We emphasize, as we have before, that the determination of fees "should not result in a second major litigation." *Hensley,* 461 U.S., at 437, 103 S.Ct. 1933. The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet "the burden of establishing entitlement to an award." *Ibid.* But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."[14]

With these words in mind, Plaintiff will address each exhibit and argument in turn.

A.   **Excessive or Redundant Billing Arguments**

1.   *Exhibit A: Objection 1 & 3; Ex B: Obj. 1 - Rule 11 and the Client File*

Counsel does not bill for reinventing the wheel in each case, and the billing statement demonstrates the pre-filing routine for each case. It's a checklist, and drafting the complaint is a very small portion of the time spent on the case. Defendant correctly notes that CDA works with the client in this case fairly frequently. However, while there are economies of scale that can be accomplished as a result of similarities in Plaintiff's cases, this does not reduce the seriousness of counsel's due diligence requirements or Rule 11 burdens, and in fact creates additional complications that must be addressed. Defendant calls

---

[13] Northern District of California Local Rule 7-3.
[14] *Fox v. Vice* (2011) 563 U.S. 826, 838.

1. these "clerical." Clerical tasks are those that do not require attorney judgment. While Defendant cites to cases where initial case assessments could be done without implicating legal issues, that simply doesn't apply in ADA litigation. Issues such as building records and the identity of the defendant are foundational aspects of the liability issues in an ADA case. Looking at the Google Maps view of a case as well as investigator photos are basic Rule 11 compliance tasks, as this is how the attorney is able to verify that the property is out of compliance. This is also a costs savings over having the attorney personally travel to each site. This isn't simply a matter of finding identity, it's formulating case theory. Similarly reviewing public records is a material aspect of determining what injunctive relief is proper. While counsel doesn't dispute that there are circumstances where support staff may appropriately review building records, the context matters. In ADA litigation, the building records are strategy determinative and must be reviewed by counsel.

Each step of the prefiling process is reasonably incurred to verify the validity of the complaint, and counsel's office has refined this process to be substantially more economical than similar firms in this area of law. During the process, a significant inquiry is made prior to filing any case to make sure any barrier complained of is both a violation of law, and reasonably correctable. This isn't something that can be done in a few minutes and requires careful inquiry into both the state of the property, the dates the property was built as well as any modifications that have been done, as well as an assessment of the financial wherewithal of the facility to make the corrections. Once this inquiry is completed, Defendant is correct, it doesn't take much time to file a complaint, and the billing reflects this. The Defendants are the beneficiaries of Plaintiff's efficiencies in being able to utilize a well-designed template. However, this doesn't obviate the need to conform it to the needs of the case. According to the defense, such complaint was largely recycled from complaints in other cases.

Presumably, the defense would agree that the dates of incident as well as the legal analysis and discussion about what the ADA requires for each of the challenged elements is also changed in every complaint. In other words, the only thing that remains the same in these "boilerplate" complaint is headings, prayers, signature blocks and general allegations, while everything unique about the case is modified.

The defense simply underestimates the amount of time it takes to sit down with a file and review the photographs and measurements, and conduct a full assessment of the case. His arguments that other cases billed different increments of time is simply nonsensical, while cases are similar, attorneys are not robots and every case is different, sometimes similar tasks simply take less time than others. Similarly, his argument that an attorney should not review the specific evidence that underpins the case argues that counsel should disregard his Rule 11 obligations. Counsel respectfully disagrees that this is reasonable.

2.  *Exhibit A: Objection 2, 4: "Too Much Time"*

"An attorney's sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required. To deny compensation, it must appear that the time claimed is obviously and convincingly excessive under the circumstances."[15] "Defense Counsel . . . with no particular expertise beyond his own Bar card… As the court did in *Chabner,* this Court rejects this uninformed second-guessing."[16] In addition, "the verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous.[17] Such records

---

[15] *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010), quoting, in part, *Perkins v. Mobile Housing Bd.*, 847 F.2d 735, 738 (11th Cir.1988).

[16] *Blackwell*, 724 F. Supp. 2d at 1080.

[17] *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 396 (

establish Plaintiff's prima facie entitlement to compensation for the time recorded.[18]

Here, defense counsel does exactly what is admonished above, he attempts to substitute his own judgment about how much time something *should* take, without sufficient explanation for why. A court should not accept a losing defendant's subjective determination that a task was excessive, when a less thorough litigation may not have led to a successful resolution.[19]

3. *Exhibit A: Objection 5, 7, 12: Clerical Entries, Instructions*
Addressed below in section B

4. *Exhibit A: Objection 6: Mediation time*

Ms. Price billed just 0.2 hours in time for preparing for mediation, a frankly short period of time. Simply printing necessary documents would more than justify the time billed. If Ms. Price had billed 2 hours for reviewing the file to attend a mediation, Defendant may have a point. However, that is not what is being billed here.

Defendant's arguments about block billing are addressed below in Section C.

5. *Exhibit A: Objection 8, 14, 15, 16, 17, 18, : Review of docket*

This collection of objections states that an attorney is not justified in reviewing the documents filed on the docket. The suggestion that an attorney should not read the orders of the court should not be taken seriously. While an assistant may calendar dates off an order, an attorney acts not only reasonably, but is expected, to read court orders. The limited time billed for each entry, just 0.1 each, is reasonable.

---

[18] *Id.*
[19]

6.     *Exhibit A: Objection 9: Discovery Diligence*

Defendants state that the business in this matter closed in April 2019. A Defendant's indication that a facility is no longer in business will always trigger a necessity for review, both to assess potential issues of mootness, and whether a new business is opening in the area. While it would be nice to be able to always believe a defendant that states something to be true, a plaintiff is obligated to conduct his own investigations into claims of his opponent.

7.     *Exhibit A: Objection 10, 11, 13: Attorney E-mails*

Similar to the docket entries, now Defendant suggests that an attorney acts unreasonably by responding to an e-mail from their opponent, or reviewing the words sent to them. If counsel had ignored these e-mails, he'd act unprofessionally. Presumably these communications were sent for a purpose? If a defendant does not wish for his opponent to bill for an interaction, he should consider if the action is warranted. Counsel acts reasonably in both responding and reviewing the communications from his opponent and should be compensated accordingly.

**B.     "Clerical Tasks", Delegation and "Tenth Billing Increments"**

Exhibit B largely amounts to objections to places where Defendant believes tasks should have been handled by support staff, and objections where Defendant takes issue with circumstances where issues *were* delegated to support staff. Each are discussed below.

1.     *Exhibit B: Objections: Clerical Tasks*

Defendant objects to various that Defendant has subjectively determined should be done by unsupervised staff. Counsel simply disagrees. This is a matter of case judgment. Defendant conflates the concepts of simple with clerical, when they are not the same. When an attorney accomplishes a routine task, that

doesn't make it clerical, it makes it only takes a few minutes and is billed accordingly. The *Chabner* and *Foley* admonitions should bear heavily on these assessments. The Defendant may not substitute his or her own judgment for those of the prevailing party. Assessing whether a different delegation paradigm would lead to different results is improper.[20] Defendant may criticize objectively unreasonable billing entries where they are not properly billed, but post-hoc and subjective criticisms should be ignored.

Drafting documents, delegating tasks and reviewing communications[21] are not "Clerical" tasks, such as hole punching, stapling or filing, they are simple, but still legal, tasks, and should be compensated accordingly, just at a low amount of time, as they are billed.

2. *Exhibit C: Excessive Delegation Objections*

In contrast with above, where Defendant says counsel should have delegated more, Defendant additionally objects in circumstances where Plaintiff *has* delegated a task to an assistant.

When an attorney instructs an assistant to act, he is making judgment calls based on the case. Similarly, when an attorney makes a decision to draft a legal document herself, she does not act unreasonably. Counsel's obligation is to bill for reasonable legal work, he is not obligated to do that work is the fashion most optimized to impress his opponent. Defendant's criticisms regarding delegation are confusing, especially given the above that if taken to its conclusion would result in increased billing. This delegation is unquestionably a savings for the Defendant and a reasonable exercise of discretion. While criticizing counsel

---

[20] *Moreno* at 1115.

[21] Counsel should be circumspect in his describing the tasks he has chosen to delegate to non-attorney staff. Plaintiff's counsel disagrees with respect to tasks that should be done by the attorney of record and amount to practicing law.

for not having support staff assist enough in handling the case, Defendant simultaneously criticizes the number of circumstances in which counsel did do so. This second category should be reviewed for the time that is *omitted*. Each of these delegation entries were reasonable exercises of discretion by the given attorneys. This is a reasonable part of any litigation. It is logically inconsistent to deny fees associated with delegation when it reduces the total bill. Here, Defendant cites no authority that providing direction to an assistant to perform tasks under the attorney's supervision is not billable. Counsel similarly does not bill any paralegal time for these tasks completion. This is quite simply a bargain to the Defendant.

3.  *Exhibit C: Objections 1-19 – Billing in "Tenths"*

Defendant correctly notes that counsel billed numerous events at 0.1-0.2. These tasks broadly fall into two categories: reading the orders of this court and delegated tasks to assistants. Counsel assumes the court will agree reading the docket entries and court orders is an objectively reasonable endeavor.

Defendant's ultimate criticism appears to take issue with industry standard billing practices. Plaintiff's counsel is unaware of any mass used billing software that tracks in smaller than 0.1 increments. It is well understood that billing occurs in 0.1 increments and this is reasonable. Should the court wish to combine these entries, it would be unfair to counsel as Plaintiff is unable to demonstrate with any more specificity the amount of time that was spent beyond what was offered and there has been no justification for the proposition that these tasks either did not happen, or were unreasonable.

C.  **Block Billing Objections**

The defense complains that the plaintiff engaged in block billing. A review of the defense argument, however, reveals that the defense thinks that any description that contains the word "and" will amount to block billing. But the

defense argument about what amounts to block billing is inaccurate. "Block billing is the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks."[22] Further, block-billing is not inappropriate *per se* when the party seeking fees meets the basic requirements of "listing his hours and identifying the general subject matter of his time expenditures."[23] As the Court noted in *Stonebrae v. Toll Bros.,* "[b]lock-billing is a typical practice in this district, and blocked-bills have been found to provide a sufficient basis for calculating a fee award."[24] A prevailing party "is not required to record in great detail how each minute of his time was expended."[25] The prevailing party seeking attorneys' fees need only "identify the general subject matter of his time expenditures" to meet its burden of establishing its fee request is reasonable.[26] This limited obligation reflects the broader policy that a "request for attorney's fees should not result in a second major litigation." *Id.*, at 437. See also *Fox v.*

---

[22] *Welch v. Metropolitan Life Ins. Co.* (9th Cir. 2007) 480 F.3d 942, fn. 2.

[23] *Fischer v. SJP–P.D. Inc.* (9th Cir.2000) 214 F.3d 1115, 1121 (internal quotations omitted); *see also Hensley,* 461 U.S. at 433 (noting that although the fee applicant bears the burden of submitting "evidence supporting the hours worked and rates claimed," an applicant is "not required to record in great detail how each minute of his time was expended")

[24] *Stonebrae L.P v. Toll Bros.* (N.D Cal. 2011) 2011 WL 1334444 at *9; *see also Oberfelder v. City of Petaluma* (N.D.Cal. Jan.29, 2002) No. C–98–1470 MHP, 2002 WL 472308 at *3 (holding that blocked-billing entries supported the reasonableness of hours expended where attorneys had logged their hours daily to the tenth of an hour and described the nature of their activities).

[25] *Hensley v. Eckerhart*, 461 U.S. 424, 437 n. 12 (1983); *see also Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir.2004) ("minimal" descriptions sufficient to support an award of attorneys' fees so long as "they establish that the time was spent on the matters for which" the party seeks fees)

[26] *Hensley*, 461 U.S. at 437 n. 12.

*Vice*, 563 U.S. 826, 828, 131 S. Ct. 2205, 2210, 180 L. Ed. 2d 45 (2011) ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.")

Defendant has simply made an insinuation of impropriety but has failed in his burden of demonstrating that any entry was unreasonable.

The case law on block billing indicates that these entries not only do not qualify, but the descriptions are adequately descriptive and the time billed can be adequately discerned. As explained below, these objections should be rejected.

1. *Motion for Summary Judgment*

It is unclear what criticism is being levied by this billing entry. No explanation is given. The defense argument about how long it should have taken to draft the Motion papers is without any proper justification. Plaintiff's counsel is good at what she does but it takes time to develop tight arguments that read well for the Court. Plaintiff's counsel bills what it takes and her billing is fair. The billing entry is specific and also time expended, and that time was reasonably incurred. To the extent this is suggested as "Block Billed" related events are reasonably billed together. In drafting a summary judgment motion there is necessarily interplay between drafting the various documents that Ms. Masanque was drafting, attempting to separate this time out further would provide no additional information valuable to the court or a client. The total time billed the process was reasonable and Defendant has provided no specific arguments indicating otherwise.

2. *Hearing on Plaintiff's Motion for Summary judgment*

Similarly, the entry for travel and attendance at a hearing requires no further itemized billing. An attorney in the Bay Area billing only two hours for travel and attendance at a hearing is lower than would be expected, thus there is no concern for overbilling. Counsel, as a matter of professionalism, doesn't aim

to arrive at precisely the time any hearing would start. Here, Counsel has billed for his time attending the hearing and travel within the Bay Area to and from that hearing.

### III. Investigator Fees

Defendants objects to the reasonableness of investigator fees included in this matter. These are one of the three categories of expenses costs that were specifically addressed by Congress: investigative costs, expert witness fees, and travel costs. Section 505 of the Americans with Disabilities Act (42 U.S.C. § 12205) explicitly incorporates the phrase 'including litigation expenses' to respond to rulings of the Supreme Court that items such as expert witness fees, travel expenses, etc., be explicitly included if intended to be covered under an attorney's fee provision." (H.R. Rpt. No. 101-485(II) at 140.) Further, the federal statute, unlike the state statutes, provides for not only attorney's fees but also litigation expenses and costs.[27] These costs have been verified by the billing attorney and it is immaterial if they deviate from rates in other cases. Rates vary for any number of reasons including identity of the investigator, distance, negotiated rate and the nature and scope of the investigation.

### IV. Estimates Regarding Motion

In Plaintiff's moving papers, the time associated handling the reply was not included as it had not yet been incurred and the nature of the matter made it difficult to estimate. Counsel has now incurred that time and can report that time precisely as an additional 5.6 hours, plus an estimated 1 hour of oral argument via telephone. (Exhibit 1 – Declaration of Dennis Price)

---

[27] *Saldana-Neily v. Taco Bell of Am., Inc.*, 2008 WL 793872, *3 (N.D. Cal. 2008).

## V. Conclusion

Plaintiff requests that his motion be granted and he be awarded his claim in entirety. Should this matter be deemed suitable for submission without argument, Plaintiff withdraws his requested estimate for that time.

Dated: April 10, 2020              CENTER FOR DISABILITY ACCESS

                                   By: /s/ Dennis Price
                                            Dennis Price, Esq.
                                            Attorney for Plaintiff