UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SCOTT JOHNSON,

        Plaintiff,

v.

BAIRD LANDS, INC., et al.,

        Defendants.

Case No. 18-cv-05365-VKD

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES**

Re: Dkt. No. 63

Plaintiff Scott Johnson moves for attorneys' fees and costs under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12205, and the California Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 52(a). Dkt. No. 63. Defendants Baird Lands, Inc. ("Baird Lands") and Jason's Café Inc. ("Jason's Café") oppose the motion. Dkt. No. 64. Pursuant to Civil Local Rule 7-1(b), the Court finds Mr. Johnson's motion suitable for decision without oral argument. For the reasons described below, the Court grants in part and denies in part the motion for fees.

**I.     BACKGROUND**

Mr. Johnson filed this action on August 30, 2018 alleging that he encountered accessibility barriers at a restaurant in violation of Title III of the ADA and the Unruh Act. Dkt. No. 1 ¶¶ 15-26. On February 28, 2020, the Court granted in part and denied in part Mr. Johnson's summary judgment motion. Dkt. No. 58. The Court dismissed the ADA claim as moot because the restaurant at issue had permanently ceased operations and Baird Lands had sold the property on which it was located. *Id.* at 4–6. The Court granted summary judgment for Mr. Johnson on his Unruh Act claim. *Id.* at 6–8. The Court entered judgment in Mr. Johnson's favor on March 6,

2020. Dkt. No. 62.

## II. LEGAL STANDARD

Because the Court dismissed Mr. Johnson's ADA claim as moot, he is not eligible to recover fees or costs under the ADA. 42 U.S.C. § 12205 (providing that a district court, "in its discretion, may allow the *prevailing* party . . . a reasonable attorney's fee, including litigation expenses, and costs") (emphasis added). However, under the Unruh Act, a prevailing party may recover "any attorney's fees that may be determined by the court." Cal. Civ. Code § 52(a). A prevailing party is one who "achieve[s] a material alteration of the legal relationship of the parties" that is "judicially sanctioned." *Jankey v. Poop Deck*, 537 F.3d 1122, 1129–30 (9th Cir. 2008) (internal quotation marks omitted). Because Mr. Johnson prevailed on his Unruh Act claim, he may recover fees under that statute.

The calculation of a reasonable fee award is a two-step process. *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). First, a court begins by calculating the "lodestar figure," or presumptive award, by multiplying the hours reasonably spent on the litigation by the attorney's reasonable hourly rate. *See id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Second, the court may enhance or reduce the lodestar figure based on the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), that were not subsumed in the initial lodestar determination. *Id.* "A strong presumption exists that the lodestar figure represents a reasonable fee, and therefore, it should only be enhanced or reduced in rare and exceptional cases." *Id.* at n.4 (internal quotation marks omitted).

With respect to litigation costs and expenses, "unlike the ADA, the . . . Unruh Act do[es] not provide for out-of-pocket litigation expenses." *Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1294 (N.D. Cal. 2014); *see also* Cal. Civ. Code § 52(a) (omitting out-of-pocket litigation expenses); *Johnson v. Hey Now Props., LLC*, No. 2:16-cv-02931 WBS KJN, 2019 WL 586753, at *4 (E.D. Cal. Feb. 13, 2019) ("Unlike the ADA, the Unruh Act contains no mention of litigation expenses as allowable costs.").

## III. DISCUSSION

Mr. Johnson seeks an award of attorneys' fees and costs in the amount of $25,878.20 for

2

work performed through the date of filing of his motion for fees. Dkt. No. 63 at 1. Of that $25,878.20, Mr. Johnson requests $24,613 in fees for 51.5 hours worked and $1,265.20 in costs and expenses. *Id.* at 21; Dkt. No. 63-3 at 1. Mr. Johnson seeks an additional award of $3,300.00 in fees for 6.6 hours spent preparing the reply brief in support of his motion for fees and participating in an oral argument that did not take place. Dkt. No. 66 at 14. In total, Mr. Johnson seeks $29,178.20 in fees and costs.

### A.   Attorneys' Fees

The Unruh Act provides for an award of fees "as may be determined by the court." Cal. Civ. Code §§ 52(b)(3), 52.1(c). The party seeking an award of fees has the burden to demonstrate that the fees claimed are reasonable. *Fischer*, 214 F.3d at 1121.

#### 1.   Reasonable hourly rate

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986), *reh'g denied, amended on other grounds,* 808 F.2d 1373 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "Generally, the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). The fee applicant has the burden of producing evidence, other than declarations of interested counsel, that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum*, 465 U.S. at 896 n.11. "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Co.*, 896 F.2d 403, 407 (9th Cir. 1990). The Court is required to consider cases that were decided relatively contemporaneously to the time the work was performed. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) (noting that "in determining the prevailing market rate a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services"); *Bell v. Clackamas*

3

1  *County*, 858 F.3d 858, 869 (9th Cir. 2003) (holding that it was an abuse of discretion for the
2  district court to apply rates in effect more than two years before the work was performed).

3  Mr. Johnson requests fees based on the hourly rates of the following nine attorneys: Mark
4  Potter ($650/hour); Dennis Price ($500/hour); Chris Carson ($500/hour); Amanda Seabock
5  ($500/hour); Isabel Masanque ($500/hour); Robert Doyle ($500/hour); Prathima Price
6  ($410/hour); Sara Gunderson ($410/hour); and Bradley Smith ($410/hour). Dkt. No. 63 at 14;
7  Dkt. No. 63-2 ¶¶ 5-13. Mr. Potter has 26 years of experience, 20 of which have been spent in
8  disability litigation. Dkt. No. 63-4 ¶ 30. Associates Ms. Carson, Mr. Price, Ms. Gunderson, Ms.
9  Seabock, and Mr. Smith have between four years of experience and nine years of experience,
10 most—but not all—of which have been spent in disability litigation. *Id.* Ms. Price, an associate,
11 has practiced in New York since 2005 and became a member of the California bar in 2018. *Id.*
12 She has approximately fourteen years of experience, although it is unclear how much experience
13 she has in disability litigation. *Id.* Ms. Masanque, also an associate, appears to have seven years
14 of experience, although it is unclear how much experience she has in disability litigation. *See* Dkt.
15 No. 63-2 ¶ 9. Mr. Johnson provides no information about Mr. Doyle's ADA litigation experience;
16 he states only that Mr. Doyle graduated from law school in 1999 and previously co-owned a law
17 firm that handled criminal, family law, and employment matters. *Id.* ¶ 10.

18 Mr. Johnson relies on the declarations of John O'Connor, an attorneys' fees expert, and
19 Mark Potter, a partner in the law firm representing Mr. Johnson in this case, to support these rates.
20 Dkt. Nos. 63-2, 63-4. Mr. O'Connor testifies that he is an attorney with 47 years of experience
21 specializing in commercial litigation and serving as an expert on attorneys' fees. Dkt. No. 63-4 ¶¶
22 1-2. He states that he has litigated (unsuccessfully) one ADA case in 2000, provided fee opinions
23 in approximately ten ADA cases, and "keep[s] current on developments in this area." *Id.* ¶ 23.
24 Mr. O'Connor opines that the most appropriate range for fees in an ADA case in the Bay Area is
25 $450-$750 per hour for partners, and $300-$550 per hour for associates. He concludes that
26 because Mr. Johnson's requested rates fall within those broad ranges, they are reasonable. *Id.* ¶
27 27.

28 In his declaration, Mr. Potter describes the background of the Center for Disability Access,

4

as well as the background and qualifications of the attorneys who worked on this matter. Dkt. No. 63-2 ¶¶ 5-13. He states that each attorney is "qualified to bill" at the rates Mr. Johnson requests and that those requested rates are "well within market rates." *Id.* ¶¶ 5-13, 15.

Defendants argue that the requested rates are excessive and not reasonable based on prior decisions from this District. Dkt. No. 65 at 4–7. They note that Mr. Johnson's motion seeks hourly rates that other courts in this District have repeatedly rejected and urge the Court to follow cases awarding between $250 and $425 per hour for all attorneys. *Id.* at 4–5 (citing *Johnson v. AutoZone, Inc.*, No. 17-cv-02941-PJH, 2019 WL 2288111, at *4–5 (N.D. Cal. May 29, 2019)). Alternatively, defendants argue that the Court should follow cases awarding slightly higher rates between $300 and $475 per hour. *Id.* at *5–6 (citing *Johnson v. Rocklin of Cal. LLC*, No. 18-cv-06836-VKD, 2019 WL 3854308 (N.D. Cal. Aug. 16, 2019), *adopted in full by Johnson v. Rocklin of Cal. LLC*, No. 18-cv-06836-EJD, Dkt. No. 27 (N.D. Cal. Sept. 6, 2019); *Shaw v. Kelley*, No. 5:16-cv-03768-VKD, 2019 WL 5102610 (N.D. Cal. Oct. 11, 2019); *Johnson v. Campbell Plaza Dev. Co.*, No. 5:18-cv-05878-SVK, Dkt. No. 26 (N.D. Cal. Sept. 27, 2019)).

The Court is not persuaded that the hourly rates Mr. Johnson requests are reasonable for the work performed in this case. First, Mr. Johnson argues that the Court should look beyond ADA litigation to civil rights litigation more broadly in assessing market rates. Dkt. No. 63 at 6–7. However, he provides no support for the contention that other matters in the category of "civil rights litigation" are similar to the ADA litigation in which Mr. Johnson engages and of which this case is typical. *Chalmers*, 796 F.2d at 1210–11 ("In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for *similar work* performed by attorneys of comparable skill, experience, and reputation.") (emphasis added). Mr. O'Connor's declaration is not helpful here. In terms of his own litigation career and experience with attorneys' fees, Mr. O'Connor focuses primarily on non-disability, non-civil rights actions involving commercial and business litigation, torts, insurance, and litigation against the United States. *See* Dkt. No. 63-4 ¶¶ 4-24. The non-ADA civil rights litigation and the kinds of cases described in Mr. O'Connor's declaration appear much more complex than this action. As Mr. Johnson acknowledges, "[t]his case did not present specialized or skillful challenges and was a fairly

5

1    straight-forward application of the law." Dkt. No. 63 at 19. When a matter "is a relatively simple

2    one, involving straight-forward application of the law, and which does not present novel or

3    difficult issues requiring a high level of skill or specialization," courts have generally found that

4    higher rates are unwarranted. *Johnson v. Oakwood Ctr. LLC*, No. 19-cv-01582-VKD, 2019 WL

5    7209040, at *13 (N.D. Cal. Dec. 27, 2019); *adopted in full by Johnson v. Oakwood Ctr. LLC*, No.

6    19-cv-01582-EJD, Dkt. No. 35 (N.D. Cal. Feb. 12, 2020).

7         Second, to the extent Mr. O'Connor relies on the Laffey Matrix to support his opinion

8    about the reasonableness of the rates Mr. Johnson seeks, that reliance is not well-founded. Dkt.

9    No. 63-4 ¶¶ 43-52. The Ninth Circuit has not adopted the Laffey Matrix as a starting point for

10   determining reasonable attorneys' fees, and other courts in this District have expressed skepticism

11   about its applicability. *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir.

12   2010) (noting that although the Laffey Matrix has been accepted in the District of Columbia, that

13   "does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market

14   3,000 miles away"); *Freitag v. Cal. Dep't of Corr.*, No. C00-2278 TEH, 2009 WL 2485552, at *2

15   n.6 (N.D. Cal. Aug. 12, 2009) ("The Laffey Matrix has not been adopted by the Ninth Circuit and

16   its somewhat mechanical approach does not appear to consider all the factors which the Ninth

17   Circuit has deemed important.") (citing *Kerr,* 526 F.2d 67); *Californians for Disability Rights v.*

18   *Cal. Dep't of Transp.*, No. C 06–05125 SBA (MEJ), 2010 WL 8746910, at *3 (N.D. Cal. Dec. 13,

19   2010). Mr. O'Connor does not provide sufficient justification for use of the Laffey Matrix here.

20        Third, Mr. O'Connor's opinion does not appear to be based on his own practice or a survey

21   of practitioners, but rather a review of case law concerning fees awarded in ADA litigation. *See*

22   Dkt. No. 63-4 ¶¶ 23, 29, 31-43. His declaration lists the cases he thinks the Court should follow

23   and the cases it should not, providing what is essentially legal argument and conclusions. *Id.*

24   "Under Federal Rule of Evidence 702, matters of law are inappropriate subjects for expert

25   testimony." *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1052 (9th Cir. 2012) (affirming

26   district court's refusal to consider expert report because the "expert opinion consists entirely of

27   improper legal conclusions . . . ."). Beyond this discussion of case law, Mr. O'Connor does not

28   explain his methodology or provide any factual basis for his opinion. *Kumho Tire Co. v.*

*Carmichael*, 526 U.S. 137, 157 (1999) ("[N]othing in either *Daubert* [*v. Merrell Dow Pharm.*, 509 U.S. 579 (1993)] or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.") (internal quotation marks omitted).

Mr. Potter's declaration suffers from a similar defect in that he summarily asserts that because he practices ADA litigation, he "can attest that the rates billed by the Center for Disability Access for its attorneys are well within market rates." Dkt. No. 63-2 ¶ 15. He provides no specific facts to support that assertion. As he has in past cases before the undersigned magistrate judge, Mr. Potter does not actually identify the rates at which attorneys specializing in disability and other civil rights matters bill for civil litigation, even though he asserts that he has "extensive experience" with respect to that information, and even though he says his practice depends on "billing at a market rate." *Id.*; *see also Johnson v. Shobeiri*, No. 18-cv-04816-VKD, 2019 WL 5458106, at *2–3 (N.D. Cal. Oct. 24, 2019). The law firm representing Mr. Johnson here typically takes ADA cases on a contingency basis, and (contrary to Mr. Potter's statements in his declaration) there is no "market" based on fees and rates that actually are billed to clients. *See Shobeiri*, 2019 WL 5458106, at *3; *Oakwood Ctr.*, 2019 WL 7209040, at *11.

For these reasons, the Court finds the evidence and case law Mr. Johnson offers in support of his requested fees to be of limited use in determining the prevailing market rate. The Court finds more persuasive several decisions from other judges in this District that have determined fee awards in analogous circumstances. For example, Judge Koh very recently determined reasonable hourly rates between $300 and $475 for many of the same individual attorneys here. *Johnson v. Cala Stevens Creek/Monroe, LLC*, No. 17-cv-04574-LHK, 2020 WL 2556989, at *7 (N.D. Cal. May 20, 2020) ($475/hour for Mr. Potter; $350/hour for Ms. Carson, Mr. Price, and Ms. Seabock; and $300/hour for Ms. Gunderson, Ms. Price, and Mr. Smith). Other recent decisions within the last year also indicate that these rates are appropriate. *See, e.g.*, *Johnson v. Li*, No. 5:19-cv-08075-EJD, 2020 WL 3268580, at *4 (N.D. Cal. June 17, 2020) (approving $475/hour for Mr. Potter and $350/hour for Ms. Seabock and Mr. Price); *Johnson v. Baglietto*, No. 19-cv-06206-TSH, 2020 WL 3065939, at *12 (N.D. Cal. May 21, 2020) (approving $475/hour for Mr. Potter and $350/hour for

Ms. Seabock); *Oakwood Ctr.*, 2019 WL 7209040, at *12 (approving $475/hour for Mr. Potter and $350/hour for Mr. Price and Ms. Seabock); *Shobeiri*, 2019 WL 5458106, at *8 (approving $475/hour for Mr. Potter and $350/hour for Mr. Price, Ms. Carson, and Ms. Seabock); *Shaw*, 2019 WL 5102610, at *10 (approving $475/hour for Mr. Potter; $350/hour for Mr. Price, Ms. Carson, Ms. Masanque, and Ms. Seabock; and $300 for Ms. Gunderson); *Campbell Plaza*, No. 5:18-cv-05878-SVK, Dkt. No. 26, at *8 (approving $475/hour for Mr. Potter; $350/hour for Mr. Price, Ms. Carson, and Ms. Seabock; and $300/hour for Mr. Smith and Ms. Price); *Rocklin of Cal.*, 2019 WL 3854308, at *12 (approving $475/hour for Mr. Potter and $350/hour for Mr. Price and Ms. Seabock).

Some courts have indeed awarded rates in ADA cases that are higher than those described above. However, in those cases, the attorneys had far more experience than Mr. Johnson's counsel. *See, e.g.*, *Rodriguez*, 53 F. Supp. 3d at 1268 (awarding fees at $645 per hour for an attorney who was a "member of the California bar for over forty-five years" and because "defendants d[id] not contest that $645/hour [was] a reasonable rate"); *Martin v. Diva Hosp. Grp., Inc.*, 2018 WL 6710705, at *2 (N.D. Cal. Dec. 7, 2018) (awarding fees of $700 per hour for attorneys with almost thirty years of experience and awarding fees of $795 per hour for an attorney with almost fifty years of experience—rates that the defendants did not contest as unreasonable). Even then, however, courts have noted "that a rate over $700/hour is the exception, and not the norm, for disability cases." *Rocklin of Cal.*, 2019 WL 3854308, at *10 (N.D. Cal. Aug. 16, 2019) (citing *Chapman v. NJ Properties, Inc.*, No. 5:16-cv-02893-EJD, 2019 WL 3718585, at *4 (N.D. Cal. Aug. 7, 2019)). Rather, "[f]or attorneys with approximately 20 or more years of experience, courts have generally approved rates ranging from $350 to $495 in disability cases." *Id.* (collecting cases).

Mr. Johnson's counsel obtained a fee award consistent with what Mr. Johnson requests here in *Love v. Rivendell II, Ltd. – L.P., et al.*, No. 18-cv-03907-JST (EDL), Dkt. No. 25 (N.D. Cal. Mar. 11, 2019) (report and recommendation granting hourly rate of $650 for Mr. Potter and $410 for Ms. Carson and Mr. Price), *adopted in full by Love v. Rivendell II, Ltd. – L.P., et al.*, No. 18-cv-03907-JST (EDL), Dkt. No. 30 (N.D. Cal. Apr. 18, 2019). However, as judges in this

8

District have noted, "that lone order granting an unopposed motion does not accurately reflect the prevailing rate in the community for work similar to this action," as "that order cited cases that concerned work substantially different from the work performed in this action." *AutoZone*, 2019 WL 2288111, at *6 n.4; *Rocklin of Cal.*, 2019 WL 3854308, at *9 (drawing same distinction). Specifically, the cases that *Rivendell* relied upon involved "a complex class action matter involving 54 hotels spread among multiple states" and set "'new precedent' that caused the California State Bar to 'change a policy which impacts potentially hundreds of individuals each year across California.'" *Rocklin of Cal.*, 2019 WL 3854308, at *9 (distinguishing *Rivendell*). This case involved no such complexity.

Considering those decisions together with the declarations of Messrs. O'Connor and Potter, the Court determines that the following hourly rates are reasonable: $475 per hour for Mr. Potter; $350 per hour for Ms. Carson, Mr. Price, Ms. Seabock, Ms. Masanque, and Mr. Doyle; and $300 per hour for Ms. Gunderson, Ms. Price, and Mr. Smith.

### 2. Hours reasonably expended

Defendants submitted an 11-page opposition brief in which they argue that the number of hours Mr. Johnson's counsel billed for work on this matter were not reasonable because they include (1) excessive or redundant billing; (2) billing attorney time for clerical/paralegal tasks; (3) excessive billing of one-tenth and two-tenths hours for reviewing routine documents, court communications, and other administrative and ministerial acts, including direction to staff; and (4) block billing. Dkt. No. 65 at 8–10. However, except for one objection in a footnote, defendants make no specific objections to any particular billing entry in their brief. A party opposing a fee request must provide specific objections to specific billing entries; conclusory and unsubstantiated objections do not warrant a fee reduction. *Open Source Sec. Inc. v. Perens*, No. 17-cv-04002-LB, 2018 WL 2762637, at *4 (N.D. Cal. June 9, 2018); *see also Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992).

Instead, defendants attach an additional 29 pages as "exhibits" containing individual objections to and arguments against specific entries in plaintiff's counsel's billing statement. The Court finds that these exhibits do not comply with Civil Local Rules 7-3(a) and 7-4(b), which

9

provide that evidentiary and procedural objections to a motion must be contained within the brief or memorandum, and that a brief or memorandum may not exceed 25 pages of text. Accordingly, the Court does not consider defendants' attached exhibits.

The only specific objection contained in defendants' brief is to the 5.2 hours spent drafting the complaint. Dkt. No. 65 at 8 n.1. Defendants contend that 5.2 hours is an excessive amount of time for drafting a complaint that is "virtually identical" to Mr. Johnson's complaints in his numerous other ADA actions. *Id.* Mr. Johnson asserts that his counsel's five-step pre-filing checklist routine is "reasonably incurred to verify the validity of the complaint," and that a majority of the 5.2 hours are spent reviewing property records and formulating case strategy accordingly. Dkt. No. 66 at 6. The Court has reviewed the billing entries related to the "pre-filing checklist" and finds that only 0.8 hours of this time are actually attributable to drafting the complaint itself, as well as "prepar[ing] interoffice barrier memo and service instructions." Dkt. No. 63-3 at ECF p.2. The remaining 4.4 hours concern researching the property and evaluating case strategy based on the investigator's report. The Court finds that this is not an unreasonable amount of time for conducting fact research, evaluating case strategy, and ensuring that Mr. Johnson complied with his Rule 11 obligations.

Beyond defendants' single objection, the Court has an independent duty to ensure that the number of hours supporting the fee request are reasonable. *See, e.g.*, *Gates*, 897 F.2d at 1402 (district court required to independently review plaintiff's fee request even absent defense objections). A court may reduce fees claimed if the documentation is inadequate, the submitted hours are duplicative or inefficient, or the requested fees appear excessive or otherwise unnecessary. *Hensley*, 461 U.S. at 434; *see also Chalmers*, 796 F.2d at 1210. Here, the Court finds that some of the hours requested are excessive or unnecessary, as discussed below.

### a. Unnecessary hours expended

The Court finds the hours requested for reviewing and responding to the Court's February 4, 2019 order to show cause for failure to comply with a court order (Dkt. No. 16) and Mr. Johnson's June 25, 2019 administrative motion requesting a case management conference (Dkt. No. 34) and for drafting and filing Ms. Carson's notice of appearance to be unreasonable.

First, the order to show cause was precipitated by the parties' failure to file a status report following the Court's order granting the parties' stipulated request to forego the joint site inspection mandated under General Order 56. Dkt. No. 15. According to the joint show cause response, all parties somehow mis-calendared the Court's deadlines. Dkt. No. 19. The Court eventually vacated the show cause hearing and referred the parties to mediation as they requested in their show cause response. Dkt. No. 20.

Second, Mr. Johnson filed his administrative motion seeking a case management conference after the Court had already issued an order setting a case management conference. Dkt. Nos. 33, 34. The Court therefore denied that administrative motion as moot. Dkt. No. 35.

Both the February 2019 show cause order and June 2019 administrative motion were the result of a lack of diligence and care, and therefore the Court discounts 0.3 hours of Ms. Carson's time spent reviewing the Court's order to show cause, order vacating the show cause hearing, and order denying the administrative motion as moot; 0.2 hours of Ms. Price's time spent drafting the administrative motion and instructing an assistant to file it; and 0.6 hours of Ms. Seabock's time spent preparing and filing the joint show cause response.

Third, Ms. Carson purportedly spent 12 minutes drafting a notice of appearance and instructing an assistant to file it, Dkt. No. 63-3 at ECF p.2, but a review of the docket shows that no separate notice of appearance for Ms. Carson was ever filed. The Court therefore reduces Ms. Carson's requested time by an additional 0.2 hours.

### b. Excessive hours due to recycling of past work

The Court notes the significant similarities between this action and another ADA/Unruh Act action before Judge Koh, *Johnson v. Cala Stevens Creek/Monroe, LLC*, No. 17-cv-04574-LHK (N.D. Cal.). The parties in both cases were represented by the same attorneys. And in both cases, Mr. Johnson was granted summary judgment on his Unruh Act claim but not his ADA claim, which was ultimately rendered moot. *Cala Stevens Creek*, 2020 WL 2556989, at *2; Dkt. No. 58 at 4–8. These similarities are meaningful for purposes of determining whether the hours Mr. Johnson claims here are reasonable.

The Court has reviewed the summary judgment and fees motion briefing in both actions

and finds that the briefing filed in this action is substantially similar to the briefing filed in *Cala Stevens Creek*. The summary judgment and attorneys' fees briefing in *Cala Stevens Creek* preceded the summary judgment and attorneys' fees briefing in this action by one to six months, thereby effectively providing Mr. Johnson something of a preview of defendants' arguments in this action. With respect to summary judgment, Mr. Johnson's opening briefs in the two matters are similarly structured with substantially similar legal arguments. *Compare Cala Stevens Creek*, No. 17-cv-04574-LHK, Dkt. No. 89 (N.D. Cal. June 27, 2019) *with* Dkt. No. 50. Mr. Johnson's reply briefs in the two matters also overlap, particularly in their discussion of supplemental jurisdiction, which constituted half of Mr. Johnson's reply brief in this action. *Compare Cala Stevens Creek*, No. 17-cv-04574-LHK, Dkt. No. 91 (N.D. Cal. July 17, 2019) *with* Dkt. No. 54. Although the Court finds the 0.7 hours Ms. Masanque spent drafting the reply brief for Mr. Johnson's summary judgment motion reasonable, the 5.5 hours she billed for the opening brief was unreasonable in view of the very substantial overlap with the briefing in *Cala Stevens Creek*. Accordingly, the Court reduces Ms. Masanque's time spent drafting the opening brief by 2.0 hours.

With respect to the instant motion for attorneys' fees, Mr. Johnson estimates that Mr. Price spent two hours drafting the opening brief and that Mr. Potter spent 18 minutes drafting his declaration in support of the motion for attorneys' fees.[1] Dkt. No. 63-3 at ECF p.8. Mr. Johnson's opening brief overlaps significantly with the one he filed in *Cala Stevens Creek*. *Compare Cala Stevens Creek*, No. 17-cv-04574-LHK, Dkt. No. 105 (N.D. Cal. Jan. 22, 2019) *with* Dkt. No. 63. Likewise, Mr. Potter's declaration in support of his request for fees is virtually identical to the one submitted in *Cala Stevens Creek*, except for a few paragraphs regarding the background of specific attorneys involved. *Compare Cala Stevens Creek*, No. 17-cv-04574-LHK, Dkt. No. 105-2 (N.D. Cal. Jan. 22, 2019) *with* Dkt. No. 63-2.

Furthermore, Mr. Johnson initially estimated 8 hours of time for Mr. Price to review the opposition brief, draft a reply brief, and attend oral argument. Dkt. No. 63-3 at ECF p.8. Mr.

---

[1] Mr. Johnson did not provide an updated figure for these two entries, therefore the Court uses the estimated time provided.

Price ultimately spent 1.5 hours reviewing the opposition brief, "noting claims[,] and diagramming the reply" brief and then 4.1 hours to draft the reply brief, which he acknowledged took "[l]onger than typical due to length." Dkt. No. 66-1 ¶¶ 2-23. A review and comparison of the opposition and reply briefs in both actions show that many of the arguments made in *Cala Stevens Creek* were repeated in this action. In *Cala Stevens Creek*, Mr. Price asserted that he spent 4.3 hours drafting a reply to an opposition brief with 45 pages of attached exhibits. *Cala Stevens Creek*, No. 17-cv-04574-LHK, Dkt. No. 112-2 ¶ 11 (N.D. Cal. Mar. 12, 2019). Here, however, Mr. Price claims 4.1 hours for drafting a reply to an opposition brief with only 29 pages of attached exhibits. Dkt. No. 66-1 ¶ 3. The Court finds 4.1 hours to be an unreasonable amount of time in light of the similarities between reply briefs and the fewer number of objections to billing entries in this action.

Accordingly, in view of the significant similarities between Mr. Johnson's briefing regarding attorneys' fees in *Cala Stevens Creek*, the Court finds it appropriate to reduce Mr. Price's time by 1.0 hour for responding to defendant's opposition. Also, because the Court found this matter appropriate for determination without oral argument and vacated the hearing (Dkt. No. 64), the time requested for oral argument on this motion is unwarranted, and the Court further reduces Mr. Price's time by 1.0 hour to account for that. *Cala Stevens Creek*, 2020 WL 2556989, at *9.

        **c.**    **Excessive hours spent reviewing docket entry text and boilerplate orders / excessive billing of 0.1 or 0.2 hours for instructions to staff**

Mr. Johnson's counsel's billing statement is replete with entries billing 0.1 or 0.2 hours for reviewing docket entry text, orders drafted by the parties themselves, or boilerplate and often brief orders common to all ADA cases, resulting in a collective billing of 2.0 hours. These include for Ms. Carson: 0.1 hours for reviewing court-issued summons that Mr. Johnson's counsel drafted; 0.3 hours for reviewing the undersigned's Standing Order for Civil Cases and the scheduling order for ADA cases; 0.1 hours for reviewing the order granting the parties' stipulation to forego the joint site inspection; 0.1 hours reviewing an order granting defendants' request to appear telephonically at a show cause hearing; 0.1 hours reviewing the ADR Clerk's Notice setting the

1  ADR phone conference; 0.1 hours reviewing a text-only docket remark regarding the time for an
2  ADR phone conference; 0.1 hours for reviewing an order regarding the ADR phone conference
3  scheduling notice; 0.1 hours reviewing an ADR docket text remark noting that the phone
4  conference was held; 0.1 hours reviewing the order granting the parties' stipulation to extend the
5  mediation deadline; 0.1 hours reviewing the mediator's certification of an ADR session; 0.1 hours
6  reviewing the order granting defendants' request to appear telephonically at the case management
7  conference; 0.1 hours reviewing defense counsel's notice of appearance; 0.1 hours reviewing the
8  order granting the parties' stipulation to continue the summary judgment hearing; 0.1 hours
9  reviewing the minute entry for the summary judgment motion hearing; and 0.1 hours reviewing
10 the judgment issued.  Dkt. No. 63-3.  Ms. Price billed the following: 0.1 hours reviewing the
11 Clerk's Notice appointing a mediator; 0.1 hours reviewing a text-only docket entry regarding the
12 pre-mediation phone conference; and 0.1 hours reviewing a text-only docket entry rescheduling
13 the pre-mediation conference.  *Id.*

14 Mr. Johnson's billing statement also contains numerous entries billing 0.1 hours for
15 instructing assistants to perform a task, for a total of 0.9 hours.  This includes for Ms. Carson: 0.1
16 hours instructing an assistant to send a copy of the complaint to Mr. Johnson; 0.1 hours instructing
17 an assistant to email defense counsel a request to reschedule the ADR phone conference; 0.1 hours
18 instructing an assistant to email the ADR unit regarding rescheduling the ADR phone conference;
19 0.1 hours instructing an assistant to notify Mr. Johnson regarding the mediation date; 0.1 hours
20 instructing an assistant to remind Mr. Johnson regarding the mediation date; and 0.1 hours
21 instructing an assistant to notify Mr. Johnson regarding the trial date.  *Id.*  Ms. Price billed the
22 following: 0.1 hours instructing an assistant to email defense counsel regarding scheduling the
23 joint site inspection; 0.1 hours instructing an assistant to send defense counsel a follow-up email
24 regarding scheduling the joint site inspection; and 0.1 hours instructing an assistant to email the
25 mediator regarding scheduling an initial telephone conference.  *Id.*

26 Though a six minute timekeeping practice is "generally reasonable[,] . . . a reduction is
27 warranted."  *Kalani v. Starbucks Corp.*, No. 13-CV-00734-LHK, 2016 WL 379623, at *8 (N.D.
28 Cal. Feb. 1, 2016); *see also Jacobson v. Persolve, LLC*, No. 14-CV-00735-LHK, 2016 WL

7230873, at *10 (N.D. Cal. Dec. 14, 2016) ("[B]illing 0.1 hours for certain practices sometimes requires a reduction."). This is especially relevant here because Mr. Johnson's counsel routinely billed six minutes "for the receipt and review of multiple single sentence orders and docket entries." *Persolve*, 2016 WL 7230873, at *10. Indeed, courts in this District have admonished Mr. Johnson's counsel to not excessively bill "for tasks that include telling an assistant to email a copy to the Center for Disability Access, reviewing the summons and the initial ADA scheduling order, reviewing the consent notice, and reviewing other administrative docket entries." *Gonzalez v. Machado*, No. 17-cv-02203-LB, 2019 WL 3017647, at *6 (N.D. Cal. July 10, 2019) (order relating specifically to attorneys Potter and Handy). This is so because Mr. Johnson's counsel are "ADA lawyer[s] who presumably [are] familiar with routine notices received at the outset of a case, as well as with the General Order No. 56 schedule for ADA cases." *Kalani*, 2016 WL 379623, at *8. In such situations, courts typically "reduce[ ] the hours by 50%." *Cala Stevens Creek*, 2020 WL 2556989, at *8–9; *Gonzalez*, 2019 WL 3017647, at *6 (citing *Kalani*, 2016 WL 379623, at *8; *Persolve*, 2016 WL 7230873, at *10).

Accordingly, the Court reduces Ms. Carson's time by 1.15 hours (50% of 2.3 hours) and Ms. Price's time by 0.3 hours (50% of 0.6 hours).

### d. Other excessive time billed

Mr. Johnson's counsel's billing records include multiple entries billing for time spent on small, routine tasks. For example, Ms. Price spent 18 minutes drafting a two-sentence notice of appearance and instructing an assistant to file it. *Compare* Dkt. No. 63-3 at ECF p.5 *with* Dkt. No. 27. Such billing is not reasonable. *See, e.g.*, *Cala Stevens Creek*, 2020 WL 2556989, at *9 (finding inefficient the billing of 18 minutes to draft a notice of appearance and instructing an assistant to file it). Similarly, Ms. Carson spent 12 minutes reviewing and filling out a form consenting to magistrate judge jurisdiction. Dkt. No. 63-3 at ECF p.2. This form is required in every case initially assigned to a magistrate judge in this District, and the Court expects that Mr. Johnson's counsel is well-acquainted with it by now. Civ. L.R. 73-1(a). Completing this one-page form consists of checking a box and applying a signature, for which 12 minutes is an unreasonable amount of time. *See* Dkt. No. 7.

15

Furthermore, Ms. Carson spent 18 minutes drafting a joint stipulation to forego the joint site inspection and emailing to opposing counsel, and Ms. Price spent 24 minutes drafting an approximately one-page stipulation to extend the mediation deadline and instructing an assistant to file it. Dkt. No. 63-3 at ECF pp.2, 5. Such stipulated requests are common in ADA litigation in this District, and the Court would expect counsel as experienced as Mr. Johnson's to have templates prepared that would reduce the amount of time needed to draft such a stipulation. *See, e.g.*, *Cala Stevens Creek*, 2020 WL 2556989, at *7 ("With over a thousand ADA cases in the United States District Court for the Northern District of California alone and experience with approximately 5,000 ADA cases in the United States District Courts for the Eastern, Northern, and Central Districts of California, the Court would expect significant efficiencies as well as templates that Plaintiffs' counsel could use in every case.").

Fees for the work described above were not reasonably incurred. Accordingly, the Court reduces Ms. Carson's time for the above tasks by 0.3 hours and Ms. Price's time by 0.5 hours.

### 3. Final lodestar amount

The Court finds the remaining hours requested to be reasonable. Multiplying the reasonable hourly rates and the hours reasonably expended, yields a lodestar amount of $14,402.50, calculated as shown in the following table:

| Attorney | Hours Claimed | Hours Reduced | Total Hours | Reasonable Rate | Fees Per Attorney |
|---|---|---|---|---|---|
| Mark Potter | 2.2 | 0.0 | 2.2 | $475/hour | $1,045 |
| Dennis Price | 9.4 | 2.0 | 7.4 | $350/hour | $2,590 |
| Chris Carson | 10.1 | 1.95 | 8.15 | $350/hour | $2,852.50 |
| Amanda Seabock | 1.7 | 0.6 | 1.1 | $350/hour | $385 |
| Isabel Masanque | 8.4 | 2.0 | 6.4 | $350/hour | $2,240 |
| Robert Doyle | 2.0 | 0.0 | 2.0 | $350/hour | $700 |
| Sara Gunderson | 0.9 | 0.0 | 0.9 | $300/hour | $270 |
| Bradley Smith | 2.0 | 0.0 | 2.0 | $300/hour | $600 |
| Prathima Price | 13.4 | 1.0 | 12.4 | $300/hour | $3,720 |
| TOTAL | 50.5 | 7.55 | 42.55 | | **$14,402.50** |

### B. Costs

Mr. Johnson requests costs in the amount of $1,265.20 for the following: service cost

($65.20), filing fee ($400), and two investigations ($800). Dkt. No. 63 at 21. Defendants do not oppose the service or filing costs but contend that the investigation costs should be reduced to $200 based on investigation costs sought by plaintiff's counsel in other cases not involving Mr. Johnson. *Id.* at 10–11.

As courts have noted, the "Unruh Act do[es] not provide for out-of-pocket litigation expenses." *Rodriguez*, 53 F. Supp. 3d at 1294; *see also Hey Now Props.*, 2019 WL 586753, at *4 (denying litigation expenses where Mr. Johnson only prevailed on Unruh Act cause of action because the "Unruh Act contains no mention of litigation expenses as allowable costs"). Indeed, Mr. Johnson's motion itself notes that only "[t]he federal statute, unlike the state statutes, explicitly provides for . . . litigation expenses and costs." Dkt. No. 63 at 21–22 (quotation marks omitted). Nonetheless, Mr. Johnson offers no rationale for how or why the Court should award litigation expenses pursuant to the Unruh Act, as his motion solely argues for these expenses under the ADA. *Id.*; Dkt. No. 66 at 14. Mr. Johnson has therefore not met his obligation to "satisfactorily explain" why he is entitled to litigation costs in the instant case. *See Kalani*, 2016 WL 379623, at *10; *see also Cala Stevens Creek*, 2020 WL 2556989, at *11.

Although Mr. Johnson does not rely on 28 U.S.C. § 1920, that statute enumerates taxable costs and "lists such items as clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012). Mr. Johnson's "filing fees and costs of service are compensable under Section 1920." *Cala Stevens Creek*, 2020 WL 2556989, at *11; *Hey Now Props.*, 2019 WL 5867533, at *4. However, § 1920 does not permit recovery of costs for investigation or expert fees. *Hey Now Props.*, 2019 WL 586753, at *4 ("Plaintiff cannot recover as costs any of his litigation expenses for investigation and expert fees because they fall outside the purview of Section 1920." (citing *Phelps Dodge Corp.*, 896 F.2d at 407)).

Accordingly, the Court awards Mr. Johnson $465.20 in service costs and filing fees.

**IV. CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part Mr. Johnson's motion

17

for attorneys' fees and costs.  The Court awards Mr. Johnson $14,402.50 in attorneys' fees and $465.20 in costs, for a total of $14,867.70.

**IT IS SO ORDERED.**

Dated: July 8, 2020

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge
